UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEVIN HAYES,

    *Plaintiff,*

v.

CITY OF TORRINGTON, ET AL

    *Defendants.*

Civil Action No.

3:02 CV 1542 (MRK)

December 22, 2003

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and D.Conn.L.R. 56, the defendants, JAYE J. GIAMPAOLO and JOHN B. FIELD, JR., submit the following Memorandum of Law in support of their Motion for Summary Judgment dated December 22, 2003. References to exhibits within this document refer to the exhibits attached to the defendants Local Rule 56 Statement dated December 22, 2003 of material facts not in dispute.

### I. STATEMENT OF FACTS.

By way of complaint dated August 26, 2002, the plaintiff, Kevin Hayes, commenced an action against the City of Torrington (the "City"), the individual members of the Board of Public Safety (the "Board"),[1] Jaye Giampaolo ("Giampaolo") and John B. Field, Jr. ("Field"). At all relevant times, Giampaolo and Field were the Acting Deputy Fire Chief and the Chief of the Torrington Fire Department, respectively. The members

---

[1] The individual members are James Potter, Carolann Kennedy, Thomas Telman, Robert Zordan, Kenneth Fuchsman, and Christopher Janco. *See* Exhibit F, Hayes Complaint, ¶4.

**ORAL ARGUMENT REQUESTED**

of the Board of Public Safety, Giampaolo and Field are all sued in their individual capacities, only. Exhibit F, Hayes Complaint, ¶4. The present Motion for Summary Judgment is addressed to the claims alleged against Giampaolo and Field, only.

The present lawsuit, when reduced to its most basic form, is nothing more than the claim that because the plaintiff Hayes scored second-highest on the promotional exam for the rank of Captain in 2001, he should have been promoted to that rank. In an effort to elevate a trivial workplace dispute comprehensively covered by a collective bargaining agreement in to a conflict involving constitutional rights, Hayes seeks due process to uncover the reasons that he was not promoted and claims that past practices and mutual understandings entitled him, for merely scoring highest on the exam, to the promotion to the rank of Captain under the equal protection of the laws. Hayes' claims are unwarranted, unfounded, unreasonable and contrary to the clearly established law of this District and this Circuit.

The defendants incorporate by reference their Local Rule 56 Statement of material facts not in dispute as if fully set forth herein. The defendants' Local Rule 56 Statement includes all of the undisputed material facts supported by admissible evidence to dispose of the present case as well as the lawsuit captioned McElroy v. City of Torrington, 3:02 CV 12525 (AVC). For the reasons discussed throughout this Memorandum, these cases operate to plead each other out of any claim based on the Equal Protection Clause of the Fourteenth Amendment.

## A.    EVENTS GIVING RISE TO SUIT.[2]

In an otherwise ordinary workplace event, two vacancies occurred in the City of Torrington Fire Department. Two positions for the rank of Captain became open because of the promotion of one officer and the retirement of another. The vacancies were duly posted and announced. Several members of the department, all holding the rank of Lieutenant, expressed interest in the positions. As required by the governing Collective Bargaining Agreement ("CBA"),[3] written and oral examinations were administered. Examinations were scored and scores were tallied, including additional points for seniority. At each stage, the scores were publicly posted and the ranking of those taking the test were revealed.

Following all of the examinations and calculations, the names of the four highest scoring individuals are forwarded to the promoting authority as required by the CBA. The City of Torrington Fire Department, while commanded by a Chief and assisted by a Deputy Chief, is overseen by the Board of Public Safety. The Board of Public Safety, a body comprised of commissioners elected by the citizens of the City of Torrington, is the exclusive promoting authority that empowered to issue appointments to the Department

---

[2]The present discussion applies equally to two lawsuits: (1) the present lawsuit filed by Kevin Hayes, and (2) the lawsuit filed by Joseph McElroy now pending before Senior United States Court Judge Alfred V. Covello. That lawsuit, McElroy v. City of Torrington, 3:02 CV 12525 (AVC), is discussed at length in this memorandum because it arises from the same factual pattern and the same transaction or occurrence. The events and circumstances of that lawsuit are established here and within the defendants' Local Rule 56 statement so that this Court need not take judicial notice of the contents of that lawsuit and the events therein. The defendants submit, however, that this Court is both empowered to and capable of taking judicial notice of the issues and facts of the McElroy lawsuit.

[3]Exhibits I and J are the relevant agreements. The full text was not duplicated because of the length of the agreements. Only the relevant portions are duplicated as exhibits in support of the defendants' Local Rule 56 Statement. The full text of both agreements are attached as exhibits to the defendants' Answer (dated February 26, 2003, Doc. #17 in Hayes; dated February 20, 2003, Doc. #16 in McElroy).

or to promote individuals to higher ranks therein. Neither the Chief nor the Deputy Chief has any power whatsoever to issue appointments to the Department or to promote individuals to higher ranks therein. Additionally, it is undisputed that the relevant portions of the CBA allow the Board to choose any one of the four names to fill a vacancy through promotion.

While this construct in mind, at a meeting of the Board on July 11, 2001, the Board was presented with the names of the four highest-scoring candidates in the order of their scores from highest to lowest. The list of candidates submitted to the Board was: McElroy, Hayes, Smith and Starr – in order of their final scores. The Board was also provided with a brief "portfolio" for each candidate. The portfolio included a photograph of the candidate and a one-page summary of their most relevant, positive accomplishments and attributes. The portfolio was prepared by Chief Field. Chief Field and Deputy Chief Giampaolo joined the Board in executive session, to discuss the candidates. Following a discussion in executive session, the Board emerged to promote then-Lieutenants Smith and Starr to the rank of Captain.

A few weeks following the meeting, Chief Field wrote letters to both Hayes and McElroy attempting to explain the actions of the Board and to encourage both Hayes and McElroy to stay focused as firefighters and Lieutenants in the Department. Exhibits C, G. In those letters, Chief Field encouraged both Hayes and McElroy to speak with him if they had any questions or concerns. Id. Both Hayes and McElroy, prior to filing grievances because they were not promoted, met with Chief Field separately but each brought a representative from the Union to the meeting. At those meetings, both Hayes

and McElroy sought concrete reasons from Chief Field for the decisions made by the Board.

Not long after the meetings with Chief Field, both Hayes and McElroy filed grievances. Exhibits D, H. The grievances were accepted and forwarded by the relevant Union officials. Id. After review of the grievances, Chief Field denied the grievances based on the plain and unambiguous language of the CBA. Exhibit I, Article XXIX; Exhibit J, Article XXIX; Exhibit M. Thereafter, both Hayes and McElroy took their grievances to the State of Connecticut Board of Labor and Mediation ("BLM") for arbitration. At this time, the grievances have been subject of several hearings and BLM has not reached a decision.

In August 2002, these lawsuits followed.

### B.    ONE TEST; TWO LAWSUITS.

Two lawsuits were filed by the two disappointed candidates following the promotions announced at the July 11, 2001 Board meeting: Kevin Hayes and Joseph McElroy. Notably, both Hayes and McElroy are represented by the same law firm and they make materially indistinguishable allegations.

#### 1.    *Hayes v. City of Torrington, et al.*, 3:02 CV 1542 (MRK)

Hayes' allegations are important to recall for the purposes of the following analysis:

(a)    Field and Giampaolo are sued in their individual capacity only. Exhibit E, Hayes Complaint, ¶4;

 (b) The crux of the complaint is the defendants failed to promote the highest scoring otherwise qualified candidate. Exhibit E, Hayes Complaint, ¶7.

 (c) Hayes applied for the promotion and scored second-highest. Exhibit E, Hayes Complaint, ¶8.

 (d) Based on that score and that score alone, Hayes claims that he had a property interest in the promotion to the rank of captain. Exhibit E, Hayes Complaint, ¶10.

 (e) Hayes claims a secret meeting was held to violate unvarying past practice to promote the highest scoring candidates. Exhibit E, Hayes Complaint, ¶12.

 (f) Because of the practice, he alleges he was led to believe that the score alone would ensure promotion. Exhibit E, Hayes Complaint, ¶15.

 (g) Based on the property interest in his promotion, Hayes claims he did not receive sufficient due process to explain the reasons for not receiving the promotion. Exhibit E, Hayes Complaint, ¶17.

 (h) Hayes claims these allegations violate his Fourteenth Amendment procedural due process rights. Exhibit E, Hayes Complaint, ¶19.

 (i) Hayes claims these allegations violate his Fourteenth Amendment Equal Protection rights. Exhibit E, Hayes Complaint, ¶20.

Both Hayes and McElroy are Lieutenants with the City of Torrington Fire Department. Hayes admits he and McElroy took the same exam and McElroy scored highest and he scored second-highest. Exhibit E, Dep. Hayes, pp. 122, 124. Hayes has personal knowledge that McElroy has filed a lawsuit because he was not promoted. Exhibit E, Dep. Hayes, p. 122. Hayes admits that he and McElroy are in the same position having been passed over for promotion. Exhibit E, Dep. Hayes, pp. 122, 124. Hayes admits that but for the named plaintiff and the factual allegations that he scored second-highest rather than highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by

Joseph McElroy. Exhibit E, Dep. Hayes, pp. 125, 125-8; *compare* Exhibit B *with* Exhibit F. Not surprisingly, McElroy's complaint and testimony are no different.

### 2. *McElroy v. City of Torrington, et al.*, *3:02 CV 1525 (AVC)*.

But for scoring highest after the calculation of all relevant score, McElroy's complaint is materially indistinguishable from Hayes' complaint.

(a) Field and Giampaolo are sued in their individual capacity only. Exhibit B, McElroy Complaint, ¶4;

(b) The crux of the complaint is the defendants failed to promote the highest scoring otherwise qualified candidate. Exhibit B, McElroy Complaint, ¶7.

(c) McElroy applied for the promotion and scored highest. Exhibit B, McElroy Complaint, ¶8.

(d) Based on that score and that score alone, McElroy claims that he had a property interest in the promotion to the rank of captain. Exhibit B, McElroy Complaint, ¶10.

(e) McElroy claims a secret meeting was held to violate unvarying past practice to promote the highest scoring candidates. Exhibit B, McElroy Complaint, ¶12.

(f) Because of the practice, he alleges he was led to believe that the score alone would ensure promotion. Exhibit B, McElroy Complaint, ¶15.

(g) Based on the property interest in his promotion, McElroy claims he did not receive sufficient due process to explain the reasons for not receiving the promotion. Exhibit B, McElroy Complaint, ¶17.

(h) McElroy claims these allegations violate his Fourteenth Amendment procedural due process rights. Exhibit B, McElroy Complaint, ¶19.

(i) McElroy claims these allegations violate his Fourteenth Amendment Equal Protection rights. Exhibit B, McElroy Complaint, ¶20.

Like Hayes, McElroy concedes that he is similarly situated to Hayes. Exhibit A, Dep. McElroy, p. 81-90, 91. McElroy admits that but for the named plaintiff and the factual allegations that he scored highest rather than second-

- 7 -

highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by Kevin Hayes. Exhibit A, Dep. McElroy, pp. 81-91; *compare* Exhibit B *with* Exhibit F.

### C.    PROCEDURAL HISTORY.

These defendants initially filed a Motion to Dismiss in this action and in the McElroy case pending before Judge Covello. Following a status conference in September 2003, the Court denied the defendants' Motion to Dismiss without prejudice to renew said arguments at summary judgment. The identical Motion to Dismiss pending before Judge Covello remains pending as of the date of filing of this Motion. The defendants will be filing the present Motion and Memorandum of Law in McElroy modified only in caption, in references to the parties and in minor details that do not affect the underlying argument.

The defendants, Giampaolo and Field, now move for summary judgment on the plaintiff's complaint. They submit that no questions of material fact exist that Hayes fails to state a claim upon which relief may be granted and that Giampaolo and Field are protected by the doctrine of qualified immunity.

## II. LAW AND ARGUMENT.

### A. STANDARD OF REVIEW.

Fed.R.Civ.P. 56(c) requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d

438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. V. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element that it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the district court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. V. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. Accord, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). See also Schacht v. Wisconsin Dep't of Corrs., 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of act to accept its version of events"); rev'd on other grounds, 524 U.S. 381 (1998).

**B. BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AS A MATTER OF LAW.**

As a matter of law, the plaintiff fails to state a claim upon which relief may be granted that the defendants Giampaolo and Field violated his Fourteenth Amendment Due Process rights. The starting point for this analysis is the determination whether Hayes had a property interest in the promotion to Captain. As discussed later, despite Hayes having the second-highest score on the exam, the presence of discretion on the part of the Board of Public Safety in the choice of which individual to promote vitiates the plaintiff's Due Process claims.

- 11 -

1.  *Due Process.*

Property interests under the Due Process Clause are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). To determine whether a contractual right can be characterized as a constitutionally protected property interest, "a court must look to whether the interest involved would be protected under state law and must weigh the 'importance to the holder of the right.'" Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 783 (2d Cir. 1991) (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir. 1983)). However, "[n]ot every contractual benefit rises to the level of a constitutionally protected property interest." Ezekwo, 940 F.2d at 782.

In general, a public employee who has a property right in continued employment cannot be deprived of that right without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Supreme Court has stated that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

When state law "makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural

due process protection." RR Village Ass'n v. Denver Sewer Corp., 826 F.2d 1197, 1201-2 (2d Cir. 1987). Moreover, "mutually explicit understandings . . . do not 'create a property interest for the purposes of due process when they are contrary to the express provisions of regulations and statutes.'" Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1982) (*quoting* Baden v. Koch, 638 F.2d 486, 492 (2d Cir.1980)).

In this Circuit, no property interest exists in a promotion solely based on receiving the highest score on a promotional exam. As a matter of law, an applicant's expectation of promotion based on test rankings fails to rise to the level of a property interest entitled to constitutional protection where the governing rules, such as the appointing statute or collective bargaining agreement, extend the barest amount of discretion to the promoting authority in choosing an employee to promote. *See, e.g.*, McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion).[4]

This holding is consistent with other circuits. *See also*, Meyer v. City of Joplin, 281 F.3d 759 (8th Cir. 2002) (police officer receiving highest test score does not have property interest in promotion where Charter grants discretion to promoting authority); Nunez v. City of Los Angeles, 147 F.3d 867, 872-73 (9th Cir. 1998) (concluding expectancy of promotion not tantamount to entitlement given contingencies inherent in promotion process); Stuart v. Roache, 951 F.2d 446, 455 (1st Cir. 1991) ("[W]here an

---

[4] Indeed, a court in the Eastern District of New York concluded that it was proper to dismiss claims of the highest-scoring candidate on the police appointment list that his due process and equal protection rights were violated in circumstances similar to those presented by Hayes. Gallo v. Suffolk

- 13 -

appointing authority may consider factors in addition to the applicant's ranking on an eligibility list, a police officer's expectation of promotion based on that list will not rise to the level of a 'property interest' entitled to constitutional protection."), cert. denied, 504 U.S. 913 (1992); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985), cert. denied, 474 U.S. 1056 (1986) ("[T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant."); Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir.) (concluding police officer did not possess property right in promotion based solely upon written examination score), cert. denied, 449 U.S. 893 (1980).

On this basis, summary judgment is appropriate in favor of Giampaolo and Field. Hayes has no property interest in his promotion (or the denial of that promotion for that matter). Under procedural due process analysis, no process was due after he was denied promotion. He is still employed and it is undisputed that he has a property interest in his public employment for continued employment (at his present rank). Looking to McMenemy, Meyer v. City of Joplin, Nunez v City of Los Angeles, Stuart v. Roache, and the other cases cited above, it is clear that Hayes does not have a property interest in his promotion – whether he received it or not, arising from the score he achieved on the examination. Additionally, the so-called expectation that he would be promoted does not transform his receipt of the highest score into a property interest because of the discretion afforded to the Board of Public Safety. And the law established by Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).

---

County Police Dept., 232 F.Supp.2d 20 (E.D.N.Y. 2002). Notably, the Gallo court relied on McMenemy to reach this conclusion.

2. ***Perry v. Sindermann*, 408 U.S. 593 (1972) Does Not Change The Analysis.**

Plaintiff's due process claim rests upon a right claimed to stem from the past practices and mutual understandings within the City of Torrington Fire Department. It is true that "a mutually explicit understanding" may create a "claim of entitlement" protectable under the Fourteenth Amendment. Perry v. Sindermann, 408 U.S. 593, 601 (1972). It is equally true, however, that such a mutually explicit understanding cannot create a protectable property interest when the understanding is contrary to the express provisions of formal rules, regulations and statutes. Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1982) (*citing* Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980)). A mutual understanding contrary to formal rules, regulations and statutory provisions may give rise to a cause of action for breach of contract, but will not give rise to a protectable property interest. Zimmerman v. Board of Educ. of Town of Branford, 597 F. Supp. 72 (1984).

In Staheli v. University of Mississippi, 854 F.2d 121, 125 (5th Cir. 1988), the plaintiff was a professor at a university that had a formal tenure policy. The policy outlined several broad requirements that a professor must fulfill to become tenured, one of which was publishing papers in prestigious journals. The plaintiff's previous direct supervisor had assured him over the previous four years that he was making satisfactory progress towards tenure and instructed the plaintiff to focus on obtaining speaking engagements, not publishing papers. The university eventually denied the plaintiff tenure, partially because he had no published papers, and he sued. The plaintiff alleged that he had a property interest in his job because he fulfilled the requirements

- 15 -

outlined in the formal policy and because of the mutual understanding with his previous supervisor that he would be tenured.

The Fifth Circuit affirmed a summary judgment that plaintiff possessed no property interest in continued employment. The court held that, the very existence of a formal tenure policy negated the possibility of "de facto" tenure. The court also stated, with reference to the representations of the plaintiff's supervisor, that the plaintiff failed to prove that the supervisor spoke for the university.  Moreover, even if the supervisor did speak for the university, the court stated, "when formal rules and informal understandings conflict, the formal rules control. In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules." Staheli, 854 F.2d at 125; see also Scanlon v. Department of Mental Health, 828 F. Supp. 421, 425 n. 6 (S.D.Miss. 1993) (*quoting* Staheli); Raju v. Rhodes, 809 F. Supp. 1220, 1243 (S.D.Miss. 1992) (*quoting* Staheli); Accord, Strother v.Columbia-Brazoria Indep. School Dist., 839 F. Supp. 459 (1993).

Informal understandings may lead to a property interest only in one of two ways: (1) if there is no officially promulgated position; Staheli, 854 F.2d at 125; Scanlon, 828 F. Supp. at 425; or (2) if they are consistent with official law. Raju, 809 F. Supp. at 1242. Strother v.Columbia-Brazoria Indep. School Dist., 839 F. Supp. 459 (1993). Turning to the facts of the present case, the CBA is the undisputed officially promulgated position. It is clear, unambiguous and contradicts the plaintiff's assertion that the informal understandings and past practices should grant him a promotion. Like the formal policy

- 16 -

which negated the plaintiff's claims in Staheli, the formal CBA here negates the so-called "past practices" claimed by the plaintiff.

The case of Houk v. Village of Oak Lawn, 647 F. Supp. 710 (N.D.Ill. 1986) reviewed and rejected a claim similar to that asserted by Hayes. In Houk, police officers of the Village of Oak Lawn claimed their procedural due process rights were violated when they were not promoted to the rank of Sergeant. The Houk plaintiffs' claim of entitled to a promotion was based on representations made to them as police officers over the years and to provisions of the Village's rules. Id. 715-6. In their Complaint, the Houk plaintiffs alleged "[Defendants] stated [plaintiffs] would be promoted to such rank in the order of their position on the posted list immediately as openings in that rank were created or existed." Id. 722. The Houk court rejected the plaintiff's claims because the Village's rules adopted what is known in the human resources field as the "Rule of Three." Id. In Houk, Rule 150.8, the official manifestation of the Rule of Three, expressly permitted the Board to fill vacancies from any one of the three top-ranked officers. Id. In so finding, the Houk court rejected the claim that the plaintiffs were guaranteed promotion. Rather, the Houk court specifically found that the plaintiffs "simply had a 'unilateral expectation' . . . of, rather than an 'entitlement' to, promotion. Houk, 647 F.Supp. at 716 (internal citations omitted).

The Houk court's discussion in support of this conclusion bears repeating:

> The statute [Rule of Three] clearly allows the Board of Fire and Police Commissioners to promote any of the top three candidates and does not restrict their discretion in choosing from among the top three candidates. It is clear that plaintiff . . . cannot complain that he was denied a promotion to which he was entitled since even if he had been among the top three candidates for promotion or even if he had been ranked number one on

- 17 -

the eligibility roster, he alleges no basis for finding that he was entitled to a promotion as a result of that ranking. Clearly, under the statute he would have no more than a unilateral expectation of promotion.

Houk, *quoting* Hermes v. Hein, 479 F. Supp. 820, 824 (N.D. Ill. 1979).

The Houk court also rejected plaintiffs' claims that the defendants' alleged representations that promotions would be in accord with test performance and Board Rules, concluding those representations created a legitimate expectation defendants would comply with the Rule of Three, not that defendants would necessarily promote the plaintiffs. Id. 716-7. The Houk court continued:

> But these sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant. It is true that state law requires promotions of government employees, including policemen, to be "on the basis of ascertained merit and seniority in service and examination." . . . The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in the constitutional sense. . . . .Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice.

Houk, 647 F.Supp at 717.

This is exactly the conclusion of this Circuit in McMenemy. Like the plaintiffs in Houk, Hayes had only an expectation of, and not an entitlement to, promotion. Hayes plainly does not have a protectable property right in Fourteenth Amendment terms. The present case is little different from the situation faced by the court in Houk. Like the Houk plaintiffs, Hayes has only a mere unilateral expectation to promotion. Hayes concedes that he has been well aware of the provisions of the CBA and that neither Deputy Chief Giampaolo nor Chief Field have any power to promote him. Like the situation in Houk, formal rules (Rule 150.8 in Houk and Article XXIX in the present case), exist which stand for essentially the same promotion: the Rule of Three defeats

- 18 -

any claim to entitlement. In the present case, the governing Rule is the Rule of Four. Moreover, like Houk, the court should reject Hayes' claim that the mutual understanding establishes a property interest. Hayes' claimed mutual understanding is contrary to express provisions of the CBA and should be rejected. Past practices cannot trump express provisions of the relevant collective bargaining agreement, rules, regulations or otherwise change the outcome. Hayes has no property interest.

In Ezekwo v. NYC Health & Hospitals Corp, 940 F.2d 775 (2d cir. 1991), this Circuit discussed the concept of reasonable expectation based on past custom and practice to become Chief Resident. In Ezekwo, no contractual provision existed one way or another way concerning appointment to Chief Resident.  In Ezekwo, it made sense that the Circuit found mutual understandings and past practices could supplement the written contract between the parties and transform the appointment of a resident to Chief Resident because the written contract, the polices, rules and regulations were silent on the issue. In the present case, the CBA language negates the "reasonable expectation" component.  Moreover, it simply does not make sense that an employee can have a extra-contractual entitlement to a promotion where the bargaining agreement expressly addresses the issue and does not create such an entitlement.

Accordingly, the defendants' Motion for Summary Judgment must be granted.