C.    **BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AS A MATTER OF LAW.**

1.    **Equal Protection.**

The plaintiff appears to press an equal protection claim pursuant to a "class of one" theory. The defendant submits that he is entitled to summary judgment as to a "class of one" claim for the following reasons: (i) the plaintiff cannot maintain an equal protection "class of one" claim absent evidence of malice or bad faith; (ii) the plaintiff cannot maintain an equal protection "class of one" claim where he has suffered no differential treatment in the terms of his employment; (iii) other similarly situated employees were not treated differently.

In Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000), the plaintiff alleged that "the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners." The plaintiff further alleged that said demand was irrational and wholly arbitrary. Id. The Court held that these allegations were sufficient to survive a 12(b)6 motion for failure to state a cognizable claim under the Equal Protection Clause. Id. at 563, 565.

Prior to Willowbrook, the rule in the Second Circuit was that a selective enforcement claim under the Equal Protection Clause required a showing that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

- 20 -

bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2nd Cir. 2001); see also, Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2nd Cir. 2001). To date, the Second Circuit has expressly declined to address the issue of whether Willowbrook has changed this Circuit's long-standing requirement that a "class of one" plaintiff show malice or bad faith. See Giordano, 274 F.3d at 751; Harlen, 273 F.3d at 500. This Circuit has, however, stated that a "class of one" plaintiff must still show "not only 'irrational and wholly arbitrary' acts, but also intentional disparate treatment." Giordano, 274 F.3d at 751 (internal citations omitted).

An essential element of a "class of one" claim is that the plaintiff was **treated differently from all others similarly situated**. See Willowbrook, 528 U.S. at 564; Jackson v. Burke, 256 F.3d 93, 96-97 (2nd Cir. 2001); Giordano, 274 F.3d at 750-51; and Harlen, 273 F.3d at 499. When plaintiffs seek to draw inferences of discrimination by showing that they were "similarly situated in all material respects" to the individuals to whom they compare themselves, Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997), their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances. Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also McGuinness v. Lincoln Hall, 2001 WL 993572 (2d Cir. 2001). What is key is that they be similar in significant respects. Id. Accord, Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2nd Cir. 2001).

## 2. Hayes' Equal Protection Claim Fails.

### i. There Is No Evidence Of Malice Or Bad Faith.

In this case, there is no evidence, nor even an allegation, that Giampaolo or Field acted out of vindictiveness or ill will towards the plaintiff. As such, the

- 21 -

plaintiff's claim should fail. Justice Breyer wrote the following in his concurring

opinion in <u>Willowbrook</u>:

> The Solicitor General and the village of Willowbrook have expressed
> concern lest we interpret the Equal Protection Clause in this case in a way
> that would transform many ordinary violations of city or state law into
> violations of the Constitution. It might be thought that a rule that looks
> only to an intentional difference in treatment and a lack of a rational basis
> for that different treatment would work such a transformation.... This
> case, however, does not directly raise the question of whether the simple
> and common instance of a faulty zoning decision would violate the Equal
> Protection Clause...because the respondent had alleged an extra factor
> as well - a factor that the Court of Appeals called "vindictive action,"
> "illegitimate animus," or "ill will."... [T]he presence of that added factor in
> this case is sufficient to minimize any concern about transforming run-of-
> the-mill zoning cases into cases of constitutional right.

<u>Willowbrook</u>, 528 U.S. at 565-66 (Breyer, J., concurring).

Prior to <u>Willowbrook</u>, the Second Circuit consistently held that malice or bad faith

was essential to proving a "class of one" equal protection claim. *See* <u>Giordano</u>, 274

F.3d at 750-51; <u>Harlen</u>, 273 F.3d at 499; <u>Lisa'a Party City, Inc. v. Town of Henriettta</u>,

185 F.3d 12, 16 (2nd Cir. 1999); <u>LeClair v. Saunders</u>, 627 F.2d 606, 609-10 (2nd Cir.

1980). That law is unchanged. As stated above, the Second Circuit has yet to address

the issue of whether a plaintiff must prove malice of bad faith in light of *Willowbrook*. It

is important to note, however, that in <u>Willowbrook</u>, the Court was deciding only whether

the plaintiff's complaint could survive a 12(b)6 motion. Moreover, Justice Breyer noted

that personal animus was alleged in <u>Willowbrook</u>. Other circuits have interpreted

<u>Willowbrook</u> as not eliminating the personal animus requirement. *See* <u>Harlen</u>, 273 F.3d

at 500, *citing*, <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1008 (7th Cir. 2000), *cert.*

*denied*, 531 U.S. 1080 (2001); <u>Shipp v. McMahon</u>, 234 F.3d 907, 916 (5th Cir. 2000).

The defendant urges this court to do the same.  Absent any evidence of malicious intent, the plaintiff's "class of one" claim should fail.

### ii.    No Adverse Employment Action Was Taken

In order to prevail on a selective enforcement "class of one" claim, the plaintiff must establish that some action or deliberate inaction was taken against him.  See e.g., Latrieste Restaurant v. Village of Port Chester, 188 F.3d 65 (2nd Cir. 1999) (enforcement of zoning regulation); Lisa's Party City, 185 F.3d at 13 (denial of plaintiff's request for a variance); Zahra v. Town of Southold, 48 F.3d 674, 683 (2nd Cir. 1995) (enforcement of Town Code by issuing remedial orders and tickets); FSK Drug Cvorp. v. Perales, 960 F.2d 6, 7 (2nd Cir. 1992) (denial of re-enrollment application without prior hearing); LeClair, 627 F.2d at 608 (suspension of plaintiff's farm).  In this case, there is no evidence of any change to the plaintiff's working conditions.

The defendants submit in the absence of  an arbitrary adverse employment action, a cognizable equal protection claim does not arise.  In order to prevail on a disparate treatment claim under Section 1983, a plaintiff is required to show intent, as well as an adverse employment action.  See Sorlucco v. New York City Police Dept., 888 F.2d 2 (2nd Cir. 1989); Weeks v. New York State, 273 F.3d 76, 85 (2nd Cir. 2001); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  A lesser obligation certainly is not warranted for a "class of one" plaintiff that does not rely on his status as a member of a protected class.

"An adverse employment action is a 'materially adverse change in the terms and conditions of employment.'" Weeks, 273 F.3d at 85.  "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." Martin v.

- 23 -

Kroger Co., 65 F. Supp.2d 516, 557 (S.D. Tex. 1999), *quoting*, Watts, 170 F.3d at 511.

In this case, Deputy Chief Giampaolo and Chief Field did not subject the plaintiff to any

adverse employment action.  It is undisputed that Deputy Chief Giampaolo and Chief

Field never reduced the plaintiff's pay or placed him on suspension; and never removed

any of the plaintiff's duties. To the extent that the promotion of others is an adverse

action, said action was taken by the Board of Public Safety, not Deputy Chief

Giampaolo or Chief Field. Absent evidence of an adverse employment action, the

plaintiff's action must fail - because the plaintiff has not been deprived of any

constitutional right.

### iii.    *Hayes is not a Class of One*

An essential element of a "class of one" claim is that the plaintiff was **treated

differently from all others similarly situated**.  *See* Willowbrook, 528 U.S. at 564;

Jackson v. Burke, 256 F.3d 93, 96-97 (2nd Cir. 2001); Giordano, 274 F.3d at 750-51;

and Harlen, 273 F.3d at 499. When plaintiffs seek to draw inferences of discrimination

by showing that they were "similarly situated in all material respects" to the individuals to

whom they compare themselves, Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64

(2d Cir. 1997), their circumstances need not be identical, but there should be a

reasonably close resemblance of facts and circumstances.  Graham v. Long Island

R.R., 230 F.3d 34, 40 (2d Cir. 2000); *see also* McGuinness v. Lincoln Hall, 2001 WL

993572 (2d Cir. 2001).  What is key is that they be similar in significant respects. Id.

*Accord*, Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2nd Cir. 2001).

The undisputed evidence demonstrates that Hayes was treated just like all

other similarly situated persons.  Both Hayes and McElroy are Lieutenants with

- 24 -

the City of Torrington Fire Department. Hayes admits he and McElroy took the

same exam and McElroy scored highest and he scored second-highest. Exhibit

E, Dep. Hayes, pp. 122, 124. Hayes has personal knowledge that McElroy has

filed a lawsuit because he was not promoted. Exhibit E, Dep. Hayes, p. 122.

Hayes admits that he and McElroy are in the same position having been passed

over for promotion. Exhibit E, Dep. Hayes, pp. 122, 124. Hayes admits that but

for the named plaintiff and the factual allegations that he scored second-highest

rather than highest, his complaint filed in United States District Court for the

District of Connecticut is materially indistinguishable from the complaint filed by

Joseph McElroy. Exhibit E, Dep. Hayes, pp. 125, 125-8; *compare* Exhibit B *with*

Exhibit F. Hayes and McElroy were – by their own allegations – the top-scoring

candidates. Exhibit B, McElroy Complaint, ¶7; Exhibit E, Hayes Complaint, ¶7.

Both were passed over for promotion based on the discretion afforded to the

Board of Public Safety by the CBA. Considering McMenemy and the other cases

cited above,[5] the collective bargaining agreement between the Union and the

City that pertains to the firefighters and the promotions in question clearly states

---

[5]*See, e.g.,* McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion). *See also,* Meyer v. City of Joplin, 281 F.3d 759 (8th Cir. 2002) (police officer receiving highest test score does not have property interest in promotion where Charter grants discretion to promoting authority); Nunez v. City of Los Angeles, 147 F.3d 867, 872-73 (9th Cir. 1998) (concluding expectancy of promotion not tantamount to entitlement given contingencies inherent in promotion process); Stuart v. Roache, 951 F.2d 446, 455 (1st Cir. 1991) ("[W]here an appointing authority may consider factors in addition to the applicant's ranking on an eligibility list, a police officer's expectation of promotion based on that list will not rise to the level of a 'property interest' entitled to constitutional protection."), *cert. denied,* 504 U.S. 913 (1992); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985), *cert. denied,* 474 U.S. 1056 (1986) ("[T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant."); Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir.) (concluding police officer did not possess property right in promotion based solely upon written examination score), *cert. denied,* 449 U.S. 893 (1980).

that any name on the list of four candidates may be promoted and provides the

"broad discretion" described in McMenemy and Baden v. Koch.

Article XXIX of the Agreement clearly states:

> The top four (4) applicants' names shall be submitted to the Board of
> Public Safety in order of their scores and said Board of Public Safety shall
> select any one (1) of said candidates and appoint to the position forthwith.

Section 1.f.

The discretion embodied in Article XXIX is no different that the statutory process

reviewed in McMenemy and the related cases. Notably, in McMenemy, the court held

that "[e]ven if the Chief at one time intended to promote McMenemy and even if he

expressed that intention as a promise, the City's broad discretion in matters of

promotion, granted by statute, prevent that promise from ripening into an entitlement."

McMenemy, supra, at 286-87 (citing Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980)

("[M]utual understandings and customs could not create a property interest for purposes

of due process when they are contrary to the express provisions of regulations and

statutes."))

The same should apply here for Hayes. Given the use of the word "any,"

summary judgment must be granted. The discretion embodied in Article XXIX is no

different that the statutory process reviewed in McMenemy and the related cases. "Any"

contemplates the broadest discretion possible for promotion from the list of four. No

other reading is reasonable.

Accordingly, summary judgment is appropriate in favor of Deputy Chief

Giampaolo and Chief Field.

- 26 -

**D.    EVEN IF THE COURT CONCLUDES THAT THE PLAINTIFF'S COMPLAINT ADEQUATELY STATES DUE PROCESS AND/OR EQUAL PROTECTION CLAIMS, THE CLAIMS AGAINST GIAMPAOLO AND FIELD ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.**

In response to the plaintiff's complaint, Giampaolo and Field have asserted their actions are protected by the doctrine of qualified immunity.

### 1.    Doctrine of Qualified Immunity.

The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is more than just a defense; *the doctrine of qualified immunity is an immunity from suit.* Locurto v. Safir, 264 F.3d at 163. (emphasis added.)

A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). *See, e.g.* Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law"); Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took").

In determining whether a particular right was clearly established at the time defendants acted, this Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the

- 27 -

Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). See Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989), citing Anderson, 483 U.S. at 640.

Recently, the Supreme Court has re-emphasized the need to look carefully at the "contours" of the right allegedly violated by a public official when undertaking the qualified immunity analysis. Saucier v. Katz, 533 U.S. 194 (2001). With regard to this litigation, for instance, there is no doubt that the case of Graham v. Connor, 490 U.S. 386 (1989), clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet, the Supreme Court has concluded that observation of that general principle is simply not enough when undertaking a qualified immunity analysis.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court reiterated the need for a careful examination of the particular constitutional right alleged to have been violated when considering the defense of qualified immunity. Not only should the right itself be identified with a higher degree of specificity, the precise contours of *the application of that more specific right to the facts at hand must be made by the district court reviewing a defense of qualified immunity*. Saucier v. Katz, 533 U.S. 194 (2001) (emphasis added). The Saucier v. Katz Court reiterated the admonition from Anderson v. Creighton that:

> [t]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The

- 28 -

contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Saucier v. Katz, 533 U.S. at 202.

Since the decision in Saucier v. Katz, the Supreme Court decided Hope v. Pelzer, 536 U.S. 730 (2002), providing additional guidance to litigants and courts examining the issues within and part of the defense of qualified immunity. In Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court denied qualified immunity to three correctional officers who had handcuffed a prisoner to a "hitching post" as punishment for non-compliance with various orders and rules. The Supreme Court's decision reversed the Court of Appeals for the Eleventh Circuit which had affirmed the district court's grant of summary judgment based on qualified immunity to the three correction officers in question.

The Supreme Court in *Hope* rejected the Eleventh Circuit's rule that the test for the existence of a clearly established right that would allow a public official to understand the potential wrongfulness of his conduct should be evaluated in light of federal law that was "pre-existing, obvious and mandatory." *See* Hope, 536 U.S. at 734. While the Eleventh Circuit had agreed that the conduct itself was violative of the Eighth Amendment, the panel held the corrections officers were not on notice that such conduct was unlawful. The Eleventh Circuit held that prior cases should be "materially similar." Finding none, the Eleventh Circuit affirmed the district court's decision granting qualified immunity to the corrections officers.

In reversing the Court of Appeals for the Eleventh Circuit, the Supreme Court rejected the gloss placed on the Saucier v. Katz analysis for qualified immunity by that

- 29 -

Circuit that there must be reported cases that are "materially similar" before a violation

is found. In so holding, the Supreme Court adopted the "fair warning" standard found in

United States v. Lanier, 520 U.S. 259 (1997) as an additional methodology to evaluate

the second prong of the qualified immunity analysis.

In Lanier, the Supreme Court began its analysis with the understanding that in

the situation of qualified immunity, "it is to say that in the light of pre-existing law the

unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The

Court reasoned that officers sued in a civil action for damages under 42 U.S.C. § 1983

should have the same right to fair notice as do defendants charged with the criminal

offense defined in 18 U.S.C. § 242. In reviewing Section 242, the Court observed that it

makes it a crime for a state official to act "willfully" and under color of law to deprive a

person of rights protected by the Constitution. The Lanier Court held that the defendant

was entitled to "fair warning" that his conduct deprived his victim of a constitutional right,

and that the standard for determining the adequacy of that warning was the same as the

standard for determining whether a constitutional right was "clearly established" in civil

litigation under Section 1983.

In Lanier, the Eleventh Circuit had assumed (and held) that a criminal defendant

should be held to a "substantially" higher standard of notice for the purposes of Section

242. In Lanier, the Supreme Court rejected this approach, and reasoned:

> This is not to say, of course, that the single warning standard points to a
> single level of specificity sufficient in every instance. In some
> circumstances, as when an earlier case expressly leaves open whether a
> general rule applies to the particular type of conduct at issue, a very high
> degree of prior factual particularity may be necessary. But general
> statements of the law are not inherently incapable of giving fair and clear

- 30 -

warning, and in other instances a general constitutional rule already
identified in the decisional law may apply with obvious clarity to the
specific conduct in question, even though the very action in question has
[not] previously been held unlawful.

Hope, 536 U.S. at 739-40 (internal citations omitted).

In sum, the Supreme Court in Hope rejected the "materially similar" gloss placed

on a qualified immunity analysis as well as the notion that the absence of a reported

case on point equates to a holding that qualified immunity applied in a given situation. In

so holding, the Supreme Court emphasized the need for the detailed, searching and

thorough analysis each and every time the defense based on the doctrine of qualified

immunity is raised. The decision in Hope v. Pelzer is, in one sense, a continuation of the

Supreme Court's admonition that the most important part of any qualified immunity

decision is the examination of the constitutional right at issue and "the precise contours

of the application of that more specific right to the facts at hand must be made." Saucier

v. Katz, 533 U.S. 194, 202 (2001). In rejecting the "materially similar" standard

espoused by the Eleventh Circuit, the Court has done nothing more than demand a high

standard – not in pleading or proof – but in the continued, searching, and thorough,

step-by-step examination of the defense of qualified immunity in the manner long-

established by clear and unequivocal precedent.

In Hope, the Court held that the corrections officers were on notice that their

conduct was clearly unlawful. Not long after the decision in Hope, the Second Circuit

stated:

Our analysis of a qualified immunity claim consists of a three step inquiry.
See Wilson v. Layne, 526 U.S. 603, 609 (1999); X-Men Sec., Inc. v.
Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999). First, we must determine
whether plaintiff has alleged a violation of a constitutional right. Then we

- 31 -

consider if the violated right was clearly established at the time of the
conduct. *See* Saucier v. Katz, 533 U.S. 194, 201 (2001). Finally, if plaintiff
had a clearly established, constitutionally protected right that was violated
by the actions of the [defendants], he or she must demonstrate that
defendants' actions were not objectively reasonable. X-Men, 196 F.3d at
66. This three step inquiry should typically be done in sequential order.
Cty. of Sacramento v. Lewis, 523 U.S. 833, 842, n. 5 (1998).

Harhay v. Town of Ellington, et al., 323 F.3d 206, 211 (2d Cir. 2003).

This statement of the law succinctly captures just the sort of step-by-step, orderly

methodology mandated by twenty years of Supreme Court precedent. Furthermore, this

Court recognized that the failure to establish any one step of the analysis grants

qualified immunity to the defendant in question.

Defendants may benefit from qualified immunity if plaintiff is unable to
establish any of these three steps. *See* X-Men, 196 F.3d at 65-66 ("These
three issues should be approached in sequence, for if the second is
resolved favorably to the official, the third becomes moot; a favorable
resolution of the first moots both the second and the third."). Thus, if there
is no deprivation of a constitutional right alleged by [the plaintiff] (the first
step), there is no need for the court to decide if the right was clearly
established at the time the [defendants] acted (the second step). *See*
Saucier, 533 U.S. at 201 ("If no constitutional right would have been
violated were the allegations established, there is no necessity for further
inquiries concerning qualified immunity.").

Harhay v. Town of Ellington, et al., 323 F.3d 206, 211-2 (2d Cir. 2003).

Therefore, before applying the qualified immunity standard, the Court must ask

whether there was a constitutional violation in the first instance. *See* Stuto v. Fleishman,

164 F.3d 820, 825 (2d Cir. 1999).

### 2.    Hayes Did Not Have A Constitutional Right To Promotion.

As discussed above, this Circuit's decision in McMenemy v. City of Rochester,

241 F.3d 279, 286 (2d Cir. 2001) holds that no property interest exists in a promotion.

Given that holding, no manipulation of the plaintiff's claims changes the fact that no

- 32 -

property interest equals no constitutional violation. Plaintiff's purported past practices claims cannot alter the clear and unambiguous terms of the CBA. Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980) ("[M]utual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes.")) The Board was empowered to choose any one (or more based on the number of vacancies) of the four names forwarded for consideration. Exhibit I, Article XXIX; Exhibit J, Article XXIX. "Not every contractual benefit rises to the level of a constitutionally protected property interest." Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 782 (2d Cir. 1991).

The Plaintiff's abstract hopes, expectations, desires and dreams that he would be promoted to Captain does not equate into the legitimate claim of entitlement required by our law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The fact that neither Deputy Chief Giampaolo nor Chief Field had any power to actually promote and that the Board had complete discretion to promote any one of the four underscores to the fantastic nature of the plaintiff's claims. See, e.g., McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion). The plaintiff's concession on this point is equally demonstrative why no constitutional violation occurred and summary judgment should enter in favor of the defendants.

- 33 -

3.  **Hayes' Claimed Constitutional Right to A Promotion Are
    Not Clearly Established.**

The Supreme Court mandates the careful examination of the claimed

constitutional rights in question when examining the defense of qualified immunity.

Completion of this analysis leads to one conclusion - the rights claimed by Hayes are

not clearly established as a matter of law. Hayes' complaint hinges on the finding that

he had a property interest in his promotion based on the score. One hardly gains from

the cases discussed that this so-called property interest was clearly established to

overcome a defense based on qualified immunity.

With regard to his due process claims, starting in this Circuit, an applicant's

expectation of promotion based on test rankings fails to rise to the level of a property

interest entitled to constitutional protection where the governing rules, such as the

appointing statute or collective bargaining agreement, extend the barest amount of

discretion to the promoting authority in choosing an employee to promote. *See, e.g.,*

McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property

interest in promotion when fire chief promised to promote firefighter but statute granted

City discretion in selecting candidate for promotion). Other circuits agree. *See, supra*,

n.5. Accordingly, the rights under which Hayes seeks protection were hardly clearly

established in 2001. In fact, the express law of this Circuit demonstrates that the rights

in question were clearly established opposite to the claims of Hayes. This Circuit has

held that no property interest exists in a promotion solely based on scores.

Moreover, given the unambiguous language of the governing Collective

Bargaining Agreement and other, much longer established law of this Circuit, the

- 34 -

claimed rights by Hayes that past practice entitles him to promotion are similarly not clearly established.  The Agreement itself grants the Board of Public Safety broad discretion to choose "any" candidate from the list of four highest scoring individuals. *See* Exhibits A, B. The discretion embodied in Article XXIX is no different that the statutory process reviewed in McMenemy and the related cases. Indeed, McMenemy and the related cases reject any argument that mutual understandings concerning promotions can ripen into a property interest.

Taking the cases in this Circuit, the cases in sister Circuits, the discretion afforded the Board of Public Safety and the language of the Agreement, it cannot be fairly said that Giampaolo or Field had "fair warning" that their actions might violate clearly established constitutional rights. See Hope v. Pelzer, 536 U.S. 730 (2002); Saucier v. Katz, 533 U.S. 194 (2001). If anything, the reported decisions point to the inescapable conclusion that the rights were not clearly established as to all aspects of Hayes' claims.

With regard to the equal protection claims, in this case, the plaintiff asserts a "class of one" claim against defendant Giampaolo and Field based on conduct that occurred in 2001. At the time of the alleged conduct, however, Willowbrook had yet to be decided, and the law of the Second Circuit was that a selective enforcement claim under the Equal Protection Clause required a showing that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or *malicious or bad faith intent to*

- 35 -

*injure a person.*"  Giordano, 274 F.3d at 750-51 (emphasis added); see also, Harlen,

273 F.3d at 499; Lisa'a Party City, 185 F.3d at 16; LeClair, 627 F.2d at 609-10.  The law

does not require municipal employees to speculate as to the state of the law, or to

predict any changes in the law.   The reasonableness of Giampaolo's and Field's

conduct must be analyzed in light of the law at the time of his alleged conduct -

therefore, any potential impact of Willowbrook is irrelevant to the issue of qualified

immunity in this case. As there is no evidence that Giampaolo or Field acted with malice

or a bad faith intent to injure the plaintiff, a reasonable officer in Giampaolo or Field

position would not have known that the alleged conduct violated the plaintiff's right to

equal protection as a "class of one."

Furthermore, Giampaolo and Field are entitled to qualified immunity because

they never took an adverse employment action against the plaintiff.  An adverse

employment action is a requisite of any disparate treatment claim 42 U.S.C. §1983.

And the defendant is not aware of any case law in the Second Circuit whereby an

employee set forth a "class of one" claim absent evidence of some adverse action or

inaction.  Given this law, and absence of law, a reasonable officer in Giampaolo and

Field's position would not have known that the alleged conduct deprived the plaintiff of a

*clearly established* constitutional or statutory right, especially when they, themselves,

have no power to promote or appoint. The plaintiff was not *treated* differently.  Hayes

was treated just like McElroy – a person similarly situated.

- 36 -

### 4. The Actions Of Deputy Chief Giampaolo And Chief Field Were Objectively Reasonable.

As discussed above, the plaintiff did not have a clearly established constitutional right to the due process to the promotion to Captain. Similarly, Hayes has no clearly established right to equal protection to Captain. Even if Hayes had a clearly established constitutional right under either theory, Deputy Chief Giampaolo and Chief Field acted in an objectively reasonable manner as good managers or commanding officers would under the circumstances. Indeed, the actions of Deputy Chief Giampaolo and Chief Field demonstrate the paradigm of reasonableness. So long as their actions were reasonable, the doctrine of qualified immunity does more than protects them from liability; it provides immunity from this suit. Locurto v. Safir, 264 F.3d at 163. (emphasis added.)

With regard to Deputy Chief Giampaolo, it is undisputed that he had no power to promote or appoint anyone to any position. Hayes concedes the Deputy Chief Giampaolo did not promise to promote Hayes. It is undisputed that Deputy Chief Giampaolo did not make any direct recommendation of any candidate during the Board meeting on July 11, 2001. Deputy Chief Giampaolo did, as any officer would when asked by the governing municipal board charged with making promotion decisions. Giampaolo gave direct answers to direct questions. The Board, the sole authority to make the promotion decisions, made the decision itself. No reasonable jury could find that this sort of conduct is anything other than objectively reasonable. No reasonable jury could find that Deputy Chief Giampaolo had any power to promote anyone.

- 37 -

With regard to Chief Field, it is equally undisputed that he had no power to promote or appoint anyone to any position. Like Deputy Chief Giampaolo, Hayes concedes that Chief Field did not promise to promote him. It is equally undisputed that Chief Field did not make any direct recommendation of any candidate during the Board meeting on July 11, 2001. Chief Field did, as any officer would when asked by the governing municipal board charged with making promotion decisions. Field gave direct answers to direct questions. The Board, the sole authority to make the promotion decision, made the decision itself. No reasonable jury could find that this sort of conduct is anything other than objectively reasonable. No reasonable jury could find that Chief Field had any power to promote anyone.

Accordingly, summary judgment is appropriate in favor of the defendants, Deputy Chief Giampaolo and Chief Field based on the doctrine of qualified immunity.

## III.    CONCLUSION.

For the reasons set forth above, the defendants, JAYE J. GIAMPAOLO and

JOHN B. FIELD, JR. pray that their Motion for Summary Judgment is granted.

THE DEFENDANTS,
JAYE GIAMPAOLO and JOHN B.
FIELD, JR.

John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06144
(860) 249-1361
(860) 249-7665 (fax)
jradshaw@hl-law.com

- 39 -

## CERTIFICATION

I hereby certify that on December 22, 2003, a copy of foregoing was served by U.S. Mail, postage pre-paid to all *pro se* parties and counsel of record.

Norman A. Pattis, Esquire
WILLIAMS & PATTIS, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Constance L. Epstein, Esquire
HOWARD, KOHN, SPRAGUE &
FITZGERALD, LLP
237 Buckingham Street
Post Office Box 261798
Hartford, CT 06126-1798

Albert Vasko, Esquire
Corporation Counsel
CITY OF TORRINGTON
140 Main Street
Torrington, CT 06790

_____
John J. Radshaw, III

- 40 -