**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KEVIN HAYES, | |
| *Plaintiff,* | Civil Action No. |
| v. | 3:02 CV 1542 (MRK) |
| CITY OF TORRINGTON, ET AL | |
| *Defendants.* | December 22, 2003 |

## LOCAL RULE 56 STATEMENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DATED NOVEMBER 26, 2003

Pursuant to Fed.R.Civ.P. 56 and D.Conn.L.R. 56, the defendants, JAYE J. GIAMPAOLO and JOHN B. FIELD, JR., submit the following statement of material facts not in dispute in support of their Motion for Summary Judgment dated November 26, 2003. Affidavits and other admissible evidence are attached as exhibits.

1. The City of Torrington (the "City") has a Fire Department (the "Department") which is supervised by the Board of Public Safety ("Board"). **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4; Exhibit K, Affidavit of Chief Field, ¶9.**

2. The plaintiff alleges that the Board was comprised of the following individuals in 2001, each of whom is sued in their individual capacities: James Potter, Carolann Kennedy, Thomas Tellman, Robert Zordan, Kenneth Fuchsman, and Christopher Janco. **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4.**

3. At all relevant times, the Fire Department has been commanded by Chief John B. Field, Jr. ("Chief Field") who has been employed by the City of Torrington Fire Department since January 1986 and as its Chief since April 2001. Chief Field

- 2 -

was first appointed Acting Chief in June 2000 until his permanent appointment as Chief in April 2001. **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4; Exhibit K, Affidavit of Chief Field, ¶¶4-7.**

4. In his capacity as Chief of the Department, Chief Field is responsible for the overall management and operation of the fire protection, fire inspection, fire prevention, and training services of the Fire Department, reporting to the Board of Public Safety of the City of Torrington. **Exhibit K, Affidavit of Chief Field, ¶9.**

5. Chief Field is sued in his individual capacity only. **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4.**

6. Chief Field is assisted by Deputy Chief Jaye J. Giampaolo ("Deputy Chief Giampaolo") who has been employed by the City and the Department since 1983 and as its Deputy Chief since May 2002. Deputy Chief Giampaolo was appointed Acting Deputy Chief of the Department in May 2000. **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶4-7.**

7. In his capacity as Deputy Chief, Deputy Chief Giampaolo is responsible for the overall operations of the City of Torrington Fire Department, including training, facilities, equipment, and materials necessary for the firefighters to complete their mission, reporting to the Chief of the Department. **Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶9.**

8. Deputy Chief Giampaolo is sued in his individual capacity only. **Exhibit B, McElroy Complaint, ¶4; Exhibit F, Hayes Complaint, ¶4.**

9. In early 2001 because of retirement and promotion, two vacancies occurred for the position of Captain in the City of Torrington Fire Department. **Exhibit B, McElroy Complaint, ¶8; Exhibit F, Hayes Complaint, ¶8; Exhibit K, Affidavit of Chief Field, ¶10; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶10.**

10. Based on the relevant provisions of the governing Collective Bargaining Agreement, notices of the vacancies were posted and a written test was administered to those individuals employed by the City of Torrington Fire Department who were eligible to take the exam. **Exhibit K, Affidavit of Chief Field, ¶11; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶11.**

11. Among the individuals eligible to take the written exam were Lieutenants Giampaolo, Hannon, Hayes, Hutson, McElroy, Smith, Starr, Theeb and Warner. **Exhibit M.**

12. Lieutenants Giampaolo, Hannon, Hayes, Hutson, McElroy, Smith, Starr, Theeb and Warner also took the oral examination. **Exhibit M.**

13. According to the relevant portions of the governing Collective Bargaining Agreement, the scores were calculated and the final results were posted according to contract. **Exhibit K, Affidavit of Chief Field, ¶¶11, 12.**

14. After all calculations were completed, the eligible individuals taking the examination for Captain scored in this order – highest to lowest: McElroy, Hayes, Smith, Starr, Warner, Giampaolo, Hannon, Hutson, and Theeb. **Exhibit M.**

15. At least two of the top four scoring candidates – McElroy, Hayes, Smith and/or Starr, were eligible for promotion to the then-vacant positions of Captain at the meeting of the Board of Public Safety on July 11, 2001. **Exhibit K, Affidavit of Chief Field, ¶¶15, 16, Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶16, 18, 19; Exhibit I, Agreement, Article XXIX, Section 1.e., p. 49-53; Exhibit J, Agreement, Article XXIX, Section 1.e., p. 41-44; Exhibit M.**

16. On July 11, 2001, the Board of Public Safety, the sole authority vested to promote or appoint any person to any rank or position, held a meeting to determine which two of the top four candidates would be promoted from Lieutenant to Captain. **Exhibit K, Affidavit of Chief Field, ¶¶ 23, 24, Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶ 26, 27.**

17. During the meeting, the Board of Public Safety voted to promote then-Lieutenants Smith and Starr to the vacant positions at the rank of Captain. **Exhibit B, McElroy Complaint, ¶15; Exhibit F, Hayes Complaint, ¶15.**

18. Following the decisions, Chief Field wrote letters to Lieutenants Hayes and McElroy expressing his feelings about the decisions and some of the reasons for the Board's decision. **Exhibit A, Dep. McElroy, pp. 40, 41-45; Exhibit C; Exhibit E, Dep. Hayes, p. 84; Exhibit G.**

19. Thereafter, both McElroy and Hayes met separately with Chief Field, each time with their Union representative. **Exhibit A, Dep. McElroy, p. 41; Exhibit E, Dep. Hayes, pp. 85-7.**

20. During those meetings, Chief Field did not expressly state the Board's reasons for the Board's decisions to promote Smith and Starr instead of McElroy and Hayes. **Exhibit A, Dep. McElroy, pp. 40-5; Exhibit E, Dep. Hayes, pp. 81-8.**

21. Thereafter, both McElroy and Hayes filed grievances which were supported by their Union. **Exhibit A, Dep. McElroy, pp. 46-7; Exhibit D; Exhibit E, Dep. Hayes, p. 87-8; Exhibit H.**

22. The grievances were denied by Chief Field because the relevant portion of the Collective Bargaining Agreement grants the Board of Public Safety complete discretion to promote any one of the candidates on a given promotion list irrespective of an individual candidate's overall score. **Exhibit M.**

23. Thereafter, both McElroy and Hayes, along with their Union, sought to arbitrate the matter before the State of Connecticut Board of Labor and Mediation. **Exhibit A, Dep. McElroy, pp. 55-6; Exhibit D; Exhibit E, Dep. Hayes, pp. 87-8; Exhibit H.**

24. The grievances filed by McElroy and Hayes have been the subject of several hearings before the State of Connecticut Board of labor and Mediation and

remain under the Board's continuing jurisdiction. **Exhibit A, Dep. McElroy, pp. 55-6; Exhibit D; Exhibit E, Dep. Hayes, pp. 87-8; Exhibit H.**

25. As of November 12, 2003, no decision had been reached by the Board of Labor and Mediation as to either grievance. **Exhibit A, Dep. McElroy, pp. 48-9; Exhibit D; Exhibit E, Dep. Hayes, pp. 87-8; Exhibit H.**

26. Not having exhausted their administrative remedies before the State of Connecticut Board of Labor and Mediation, approximately 13 months after the decision was made to promote Smith and Starr over McElroy and Hayes, both McElroy and Hayes filed lawsuits in the United States District Court for the District of Connecticut. **Exhibit B, McElroy Complaint; Exhibit F, Hayes Complaint.**

27. The lawsuit filed by Kevin Hayes, styled Hayes v. City of Torrington, et al, has a docket number of 3:02 CV 1542 and is assigned to United States District Court Judge Mark R. Kravitz. **Exhibit F, Hayes Complaint.**

28. The lawsuit filed by Joseph McElroy, styled McElroy v. City of Torrington, et al, has a docket number of 3:02 CV 1525 and is assigned to United States District Court Judge Alfred V. Covello. **Exhibit B, McElroy Complaint.**

29. It is indisputable that both lawsuits name the same defendants. ***Compare* Exhibit B, ¶4 *with* Exhibit F, ¶4.**

30. It is indisputable that both lawsuits make materially indistinguishable factual allegations against the same defendants. ***Compare* Exhibit B *with* Exhibit F.**

31. It is indisputable that both lawsuits advance the same legal theories against the same defendants. ***Compare* Exhibit B, ¶4 *with* Exhibit F, ¶4.**

32. In McElroy v. City of Torrington, et al, No. 3:02 CV 1525, Joseph McElroy ("McElroy"), is a firefighter employed by the City of Torrington and has been so employed since 1988. **Exhibit A, Dep. McElroy, p. 10.**

33. McElroy admits that the governing Collective Bargaining Agreement ("CBA") is the exclusive statement of the rules and regulations governing the employment relationship between the firefighters, including himself, and the City of Torrington Fire Department. **Exhibit A, Dep. McElroy, p. 23-4.**

34. McElroy admits the CBA is the exclusive source of rules and regulations concerning promotions. **Exhibit A, Dep. McElroy, p. 24.**

35. McElroy admits that neither Chief Field nor Deputy Chief Giampaolo have any power to promote or appoint anyone to any rank or position in the City of Torrington Fire Department. **Exhibit A, Dep. McElroy, p. 25.**

36. McElroy admits that a vote of the Board of Public Safety is the exclusive method by which anyone may be promoted or appointed to any rank or position in the City of Torrington Fire Department. **Exhibit A, Dep. McElroy, p. 26.**

37. Despite claiming that he had no opportunity to be heard after he was not promoted, McElroy admits receiving a letter from Chief Field concerning the decision not to promote him and admits he discussed not being promoted with Chief Field in August 2001. **Exhibit A, Dep. McElroy, p. 40, 41, 41-45; Exhibit B.**

38. McElroy admits filing a grievance because he was not promoted which was supported by his Union. **Exhibit A, Dep. McElroy, pp. 46-7; Exhibit D.**

39. McElroy's grievance, after being denied by Chief Field, is now pending before the State of Connecticut Board of Labor and Mediation. **Exhibit A, Dep. McElroy, pp. 48-9; Exhibit N.**

40. McElroy admits that neither Chief Field nor Deputy Chief Giampaolo ever promised that he would be promoted on July 11, 2001. **Exhibit A, Dep. McElroy, pp. 52-3.**

41. McElroy admits he has had an opportunity to be heard before the State of Connecticut Board of Labor and Mediation. **Exhibit A, Dep. McElroy, pp. 55-6.**

42. As a firefighter employed by the City of Torrington, McElroy knows Kevin Hayes. **Exhibit A, Dep. McElroy, p. 57.**

43. McElroy knows that Kevin Hayes has filed a lawsuit for not being promoted. **Exhibit A, Dep. McElroy, p. 57.**

44. McElroy is a member of Local 1567, the Union for the City of Torrington firefighters. **Exhibit A, Dep. McElroy, p. 64.**

45. In his capacity as a long-serving member of Local 1567, McElroy knows that the Collective Bargaining Agreement governs the terms and conditions of his working relationship with the City of Torrington Fire Department. **Exhibit A, Dep. McElroy, pp. 64-6.**

46. McElroy admits that all promotions in or appointments to the City of Torrington Fire Department are made by a vote of the Board of Public Safety. **Exhibit A, Dep. McElroy, p. 66, 68-71.**

47. McElroy admits that neither Chief Field nor Deputy Chief Giampaolo have any power to promote or appoint anyone to any rank or position within the City of Torrington Fire Department. **Exhibit A, Dep. McElroy, p. 67, 68-71.**

48. Further, McElroy admits that the Board of Public Safety may appoint or promote any person on a given promotion list regardless of that persons score or rank on that list because the Board of Public Safety is vested with the discretion to make that decision. **Exhibit A, Dep. McElroy, p. 68-71, 71-4.**

49. McElroy concedes that he is similarly situated to Hayes. **Exhibit A, Dep. McElroy, p. 81-90, 91.**

50. McElroy admits that but for the named plaintiff and the factual allegations that he scored highest rather than second-highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by Kevin Hayes. **Exhibit A, Dep. McElroy, pp. 81-91;** *compare* **Exhibit B** *with* **Exhibit F.**

51. In Hayes v. City of Torrington, et al, No. 3:02 CV 1542, the plaintiff, Kevin Hayes ("Hayes"), is a firefighter employed by the City of Torrington and has been so employed since 1985. **Exhibit E, Dep. Hayes, p. 19;Exhibit F, Hayes Complaint, ¶3.**

52. Hayes' evidence that the defendants acted jointly or in concert with each other is limited to all of the individual defendants being present at the Board of Public Safety meeting on July 11, 2003. **Exhibit E, Dep. Hayes, pp. 26-7.**

53. Hayes' evidence that he was not promoted based on rumor instead of fact is based on his perception of testimony he heard at a State of Connecticut Board of Labor and Mediation hearing held long after the present complaint was filed. **Exhibit E, Dep. Hayes, pp. 48-9.**

54. Hayes believes that a member of the Board referred to Hayes as "Lt. Dummy." **Exhibit E, Dep. Hayes, pp. 49-50, 132.**

55. Hayes was not present during the executive session of the Board of Public Safety and has no personal knowledge of what transpired during said meeting. **Exhibit E, Dep. Hayes, pp. 27, 29, 37.**

56. Hayes admits that Chief Field and Deputy Chief Giampaolo have no power to promote or appoint him or anyone else to any rank or position in the City of Torrington Fire Department. **Exhibit E, Dep. Hayes, pp. 29-30, 34, 45, 97-8, 99-101, 104-106, 106-108.**

57. Hayes admits that a vote of the Board of Public Safety is the only way that someone may be promoted or appointed to any rank or position in the City of Torrington Fire Department. **Exhibit E, Dep. Hayes, pp. 29-30, 34, 45, 97-8, 99-101, 104-106, 106-108.**

58. Hayes admits that the governing Collective Bargaining Agreement ("CBA") is the exclusive understanding and expression of the rules and regulations governing

the working relationship between the firefighters, like himself, and the City of Torrington Fire Department. **Exhibit E, Dep. Hayes, pp. 95-97.**

59. Hayes was present at the public session of the Board of Public Safety on July 11, 2001 and did not object to the Board's decision to close the public session and enter into executive session for the purpose of discussing the pending promotions. **Exhibit E, Dep. Hayes, pp. 71-4.**

60. Hayes is a member of Local 1567, the Union that represents all firefighters in the City of Torrington Fire Department. **Exhibit E, Dep. Hayes, p. 75.**

61. As a member of Local 1567, Hayes is familiar with Collective Bargaining Agreements, generally, and the Collective Bargaining Agreement that governs his employment relationship with the City of Torrington Fire Department. **Exhibit E, Dep. Hayes, p. 95.**

62. Hayes admits that Article XXIX of the governing CBA establishes that Chief Field and Deputy Chief Field have no power to promote or appoint any person in the City of Torrington Fire Department to any rank or position. **Exhibit E, Dep. Hayes, pp. 95, 97-9, 104-8.**

63. Hayes admits that Article XXIX of the governing CBA establishes that the Board of Public Safety is the sole authority vested with the power to promote or appoint person in the City of Torrington Fire Department to any rank or position. **Exhibit E, Dep. Hayes, pp. 95, 97-9, 104-8.**

64. Hayes admits that Article XXIX grants the Board of Public Safety the discretion to choose any one of the four candidates submitted to the Board in any order regardless of their test scores. **Exhibit E, Dep. Hayes, pp. 95, 97-9, 104-8.**

65. Chief Field wrote Hayes a letter informing him that he was not promoted and offered some reasoning for not being promoted. **Exhibit E, Dep. Hayes, p. 84; Exhibit G.**

66. Despite claiming in his complaint that he has not had an opportunity to be heard by Chief Field, Hayes admits he spoke with Chief Field after he was not promoted and after he received the letter from the Chief. **Exhibit E, Dep. Hayes, p. 83; Exhibit G.**

67. At the meeting between Chief Field and Hayes on August 15, 2003, Chief Field told Hayes that he would not give him every reason why he was not promoted but told him that he did not meet the profile that the Board of Public Safety sought in the most recent round of promotions to the rank of Captain. **Exhibit E, Dep. Hayes, p. 83, 84, 85-6, 86-7.**

68. Hayes filed a grievance for not being promoted which was endorsed and forwarded by his Union. **Exhibit E, Dep. Hayes, pp. 87-8, 90.**

69. Hayes' grievance was denied by Chief Field and has been appealed to the State of Connecticut Board of Labor and Mediation. **Exhibit E, Dep. Hayes, p. ; Exhibit M.**

70. As of November 12, 2003, Hayes' grievance is still pending. **Exhibit E, Dep. Hayes, pp. 8-10, 49-50.**

71. Hayes is friendly with McElroy. **Exhibit E, Dep. Hayes, p. 111.**

72. Hayes admits he and McElroy took the same exam and McElroy scored highest and he scored second-highest. **Exhibit E, Dep. Hayes, pp. 122, 124.**

73. Hayes has personal knowledge that McElroy has filed a lawsuit because he was not promoted. **Exhibit E, Dep. Hayes, p. 122.**

74. Hayes admits that he and McElroy are in the same position having been passed over for promotion. **Exhibit E, Dep. Hayes, pp. 122, 124.**

75. Hayes admits that but for the named plaintiff and the factual allegations that he scored second-highest rather than highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from

the complaint filed by Joseph McElroy. **Exhibit E, Dep. Hayes, pp. 125, 125-8;** *compare* **Exhibit B** *with* **Exhibit F.**

76. Chief Field and Deputy Chief Giampaolo were present during a meeting of the Board of Public Safety on July 11, 2001 at which the decision would be made to promote two individuals to the rank of Captain. **Exhibit K, Affidavit of Chief Field, ¶¶13-15 ; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶17-18 .**

77. Both Chief Field and Deputy Chief Giampaolo were present at the public and executive sessions of the Board of Public Safety meeting on July 11, 2001. **Exhibit K, Affidavit of Chief Field, ¶¶13-15; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶17-18.**

78. At the July 11, 2001 meeting in executive session, the top four (4) names were presented to the Board in the order of their cumulative scores, highest to lowest, but the actual scores were not presented to the Board of Public Safety. **Exhibit K, Affidavit of Chief Field, ¶15; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶18.**

79. On July 11, 2001, the promotion list, in order of scores, was McElroy, Hayes, Smith, and Starr. **Exhibit M.**

80. At the July 11, 2001 meeting, the Board of Public Safety was presented with a portfolio of each candidate. **Exhibit K, Affidavit of Chief Field, ¶17; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶20.**

81. The portfolio comprised a photograph of the candidate with a one-page summary of that candidate's positive qualifications and experience. **Exhibit K, Affidavit of Chief Field, ¶18; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶21.**

82. Chief Field produced the portfolios after having reviewed each candidate's personnel file. **Exhibit K, Affidavit of Chief Field, ¶19; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶22.**


83. Lt. Smith submitted a resume for consideration by the Board of Public Safety at the meeting on July 11, 2001 but it was rejected by the Board and not considered in any manner during the deliberations of the Board as to which candidates to promote to the rank of Captain. **Exhibit K, Affidavit of Chief Field, ¶20; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶23.**

84. At the Board of Public Safety meeting on July 11, 2001, Chief Field did not make any recommendation as to which person on the promotion list for Captain. **Exhibit K, Affidavit of Chief Field, ¶21.**

85. At the Board of Public Safety meeting on July 11, 2001, Chief Field did not make any recommendation as to which person on the promotion list for Captain. **Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶21.**

86. At the Board of Public Safety meeting on July 11, 2001, both Chief Field and Deputy Chief Giampaolo answered questions posed by members of the Board about the candidates. **Exhibit K, Affidavit of Chief Field, ¶22; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶25.**

87. Neither Chief Field nor Deputy Chief Giampaolo had any power to promote or appoint any member of the Torrington Fire Department to any position or rank. **Exhibit I, Agreement, Article XXIX, pp. 49-53 ; Exhibit J, Agreement, Article XXIX, pp. 41-44; Exhibit K, Affidavit of Chief Field, ¶¶23-4; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶26-7.**

**88.** The exclusive power to promote or appoint any member of the City of Torrington Fire Department is vested in the Board of Public Safety by virtue of Article XXIX of the governing Collective Bargaining Agreement and the Charter of the City of Torrington. **Exhibit I, Agreement, Article XXIX, pp. 49-53 ; Exhibit J, Agreement, Article XXIX, pp. 41-44; Exhibit K, Affidavit of Chief Field, ¶¶23, 31; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶¶26, 31.**

89. Prior to the meeting on July 11, 2001, Chief Field socialized with Lt. McElroy and his family. **Exhibit K, Affidavit of Chief Field, ¶25.**

90. After the meeting on July 11, 2001, Chief Field told Lt. McElroy that he could not have made a recommendation of Lt. McElroy during the July 11, 2001 for promotion because the knowledge of our friendship would create the appearance of impropriety. **Exhibit K, Affidavit of Chief Field, ¶25-27.**

91. Because of the possible appearance of impropriety because of his friendship with Lt. McElroy, Chief Field did not make a direct or explicit recommendation of any candidate for promotion during the meeting on July 11, 2001. **Exhibit K, Affidavit of Chief Field, ¶¶25-27.**

92. Neither Chief Field nor Deputy Chief Giampaolo ever promised the plaintiff that he would be promoted to the rank of Captain. **Exhibit K, Affidavit of Chief Field, ¶28; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶28.**

93. Both Chief Field and Deputy Chief Giampaolo have, in the past, encouraged and counseled the plaintiff with regard to job-related issues as superior officers. **Exhibit K, Affidavit of Chief Field, ¶29; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶29.**

94. As a firefighter employed by the City of Torrington for nearly 20 years, Chief Field has never believed that promotions were guaranteed to those based upon their ranking on the promotion list alone. **Exhibit K, Affidavit of Chief Field, ¶30.**

95. As a firefighter employed by the City of Torrington for nearly 20 years, Chief Field has known that the Board of Public Safety, according to the governing Collective Bargaining Agreement, is the sole promoting and appointing authority in the City of Torrington Fire Department and does so in its complete discretion. **Exhibit K, Affidavit of Chief Field, ¶31.**

96. As a firefighter employed by the City of Torrington for more than 20 years, Deputy Chief Giampaolo has never believed that promotions were guaranteed to those based upon their ranking on the promotion list alone. **Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶30.**

- 14 -

97. As a firefighter employed by the City of Torrington for more than 20 years, Deputy Chief Giampaolo has known that the Board of Public Safety, according to the governing Collective Bargaining Agreement, is the sole promoting and appointing authority in the City of Torrington Fire Department and does so in its complete discretion. **Exhibit K, Affidavit of Chief Field, ¶ ; Exhibit L, Affidavit of Deputy Chief Giampaolo, ¶31.**

THE DEFENDANTS,
JAYE GIAMPAOLO and JOHN B. FIELD, JR.

/s/ John J. Radshaw, III
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)
jradshaw@hl-law.com

## **CERTIFICATION**

      I hereby certify that on December 22, 2003, a copy of foregoing was served by U.S. Mail, postage pre-paid to all *pro se* parties and counsel of record.

| | |
|---|---|
| Norman A. Pattis, Esquire<br>WILLIAMS & PATTIS, LLC<br>51 Elm Street, Suite 409<br>New Haven, CT  06510 | Constance L. Epstein, Esquire<br>HOWARD, KOHN, SPRAGUE &<br>FITZGERALD, LLP<br>237 Buckingham Street<br>Post Office Box 261798<br>Hartford, CT 06126-1798<br><br>Albert Vasko, Esquire<br>Corporation Counsel<br>CITY OF TORRINGTON<br>140 Main Street<br>Torrington, CT 06790 |

<u>/s/ John J. Radshaw, III</u>
Thomas R. Gerarde
John J. Radshaw, III