UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN HAYES | : | |
| | : | |
| VS. | : | |
| | : | |
| CITY OF TORRINGTON, | : | |
| JAMES POTTER, | : | NO. 3:02CV1542(MRK) |
| CAROLANN KENNEDY, | : | |
| THOMAS TELMAN, | : | |
| ROBERT ZORDAN, | : | |
| KENNETH FUCHSMAN, | : | |
| CHRISTOPHER JANCO, | : | |
| JAYE GIAMPAOLO and | : | |
| JOHN B. FIELD, JR. | : | JANUARY 12, 2004 |

## **BRIEF IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT**

For longer than any party to this lawsuit can remember, promotions within the Torrington Fire Department have been based solely and exclusively on candidates' rankings on a comprehensive promotional examination which covers every factor relevant to promotion, including seniority within the department, leadership skills, the results of an oral interview and the results of a written examination.[1] The plaintiff and Joseph McElroy, plaintiff in a related case now pending before Judge Covello, scored Number 2 and Number 1, respectively, in the promotional examination for promotion to

---

[1] Every fact recited in this memorandum is supported by citations to submitted evidence in the plaintiff's Local Rule 56 Statement, submitted herewith.

1

Captain in that department which was given in 2001. At the time, both held the rank of Acting Captain. There were two vacancies. For the first and only time in the department's recorded history, both were denied promotion and the promotions went instead to lower-scoring candidates.

At that time, defendant Field was the Fire Chief and defendant Giampaolo (who held the rank of Lieutenant and had scored very poorly in the same exam) was Acting Deputy Fire Chief.[2] Both defendants participated in the secret Board of Public Safety meeting at which the promotion decisions were made. Both recommended that the Board not promote Hayes and McElroy.[3] Giampaolo actively lobbied Board members, prior to the meeting, to vote against Hayes and McElroy. Long before the Board meeting, Giampaolo told his best friend that Hayes and McElroy would not be promoted. The remaining defendants were members of the Board who voted to deny promotion to Hayes and McElroy. This memorandum addresses the pending motions of all defendants.

The defendants knew that, in denying promotion to the top scorers on the promotional exam, they were treating these two men differently from every other fireman in that department who ever had been a candidate for promotion. They have

---

[2] Giampaolo subsequently was awarded the position of permanent Deputy Chief.

[3] Although the defendants claim otherwise, the plaintiff has submitted sworn testimony by one Board member that they did so.

been unable – indeed, when asked, have refused – to offer any reasonable basis for this disparate treatment.[4]

Both men have filed suits in this court alleging that the actions of the defendants in denying them promotion in this manner violated their Fourteenth Amendment right to equal protection of the laws.[5] The defendants have moved for summary judgment. At the heart of their motion is a fundamental confusion: The defendants seem to think that the relevant comparator for each plaintiff is the other plaintiff. Quite obviously, the relevant comparators for both plaintiffs are all the other members of the department whose promotions have been based solely on their scores on the promotional examination.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

---

[4] One Board member testified that he voted against Hayes and McElroy because he was told that both were "pussy whipped". He did not offer a definition of that term.

[5] The additional claim of denial of procedural due process of law is withdrawn.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court

must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v.

5

Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), *citing* Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000).  Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918).  Expressly endorsing the concept of equal protection for the so-called "class of one" and emphatically rejecting any idea that motivation is relevant to the

equal protection analysis, the court articulated the standard: "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 120 S. Ct. at 1074. Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); and Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). All that a plaintiff need prove is (1) disparate treatment and (2) lack of a rational basis for the disparity. A plaintiff must "allege[] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 564.

Holding precisely that, this court has summarized the present state of Second Circuit equal protection law: "Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), *citing* Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment re-

ceived, or that the [unequal treatment] was motivated by animus." *Ibid.*, quoting <u>Harlen</u>, *supra*, at 500.  *Cf.*, <u>Barstow v. Shea</u>, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); <u>Oneto v. Town of Hamden</u>, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001); <u>Carpenteria Valley Farms, Ltd. v. County of Santa Barbara</u>, 334 F.3d 796, 802 (9th Cir. 2003).

    Viewed against this clearly-established law, and crediting the plaintiff's evidence and the reasonable inferences which can be drawn therefrom, it is obvious that there is enough in this case to warrant a verdict against the defendants.  The evidence would support a conclusion that the defendants Field and Giampaolo actively participated with the other defendants in the decision to deny promotion to the plaintiff and that the decision to deny him promotion would not have been made without the actions of the defendants Field and Giampaolo.  The evidence supports the claim that the plaintiff suffered injury as a consequence of being denied promotion.  The evidence supports the claim that the defendants intentionally treated the plaintiff differently from every other top-scoring candidate for promotion in the recorded history of the Torrington Fire Department, that the defendants knew they were treating him differently, that their actions were intentional, and that they have no rational basis for this disparity.

The individual defendants[6] also make the backup claim that they are entitled to qualified immunity. They don't exactly explain why, but the grounds for granting qualified immunity do not fit the defendants in this action.

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted).

The law was clearly established. *Olech* was decided a year before the defendants' actions in this case. If the plaintiff's evidence is credited, as it must be here, no reasonable public official could have thought that the kind of intentional but irrational disparate treatment imposed upon the plaintiff was lawful.

The motion for summary judgment must be denied.

---

[6] The qualified immunity defense is not available to municipal defendants. Owen v. City of Independence, 445 U.S. 622 (1980); Ford v. Reynolds, 316 F.3d 351, 356 (2nd Cir. 2003); Ruffino v. Sheahan, 218 F.3d 697 (7th Cir. 2000).

        Respectfully submitted:

        _____
        JOHN R. WILLIAMS (ct00215)
        51 Elm Street
        New Haven, CT 06510
        203/562-9931
        FAX:  203/776-9494
        E-Mail: jrw@johnrwilliams.com
        Plaintiff's Attorney

<u>CERTIFICATION OF SERVICE</u>

On the date above stated, copies hereof were mailed to Albert G. Vasko, Esq., 140 Main Street, Torrington, CT 06790; Attorneys Jack G. Steigelfest and Constance L. Epstein of Howard, Kohn, Sprague & FitzGerald, 237 Buckingham Street, Hartford, CT 06106; and John J. Radshaw, III, Esq., Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06116.

        _____
        JOHN R. WILLIAMS